UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

XAYPHONE PHANHOUVONG,
A-025-142-781,

            Petitioner,

    v.

KRISTI NOEM, et. al.,

            Respondents.

No.  1:26-cv-02147-DC-DMC-HC

FINDINGS AND RECOMMENDATIONS

Petitioner, an immigration detainee proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  See ECF No. 1. Respondents filed an answer, ECF No. 8.

**I. BACKGROUND**

Petitioner contends he arrived in the United States as a child as a Laos refugee but subsequently lost his refugee status due to a marijuana charge. ECF No. 1, pgs. 3-4. According to Petitioner, he is currently detained "pending the execution of his final removal [order] that was issued over 20-years ago for a marijuana charge he was convicted of." Id. at 1. Petitioner asserts that when he took his plea deal for the marijuana charge "he was never informed that the charges he pled to would result in him being removed." Id. at 4. Petitioner contends that, at the time, his

main language was Lao, and while he was "in jail, a person from the department of homeland security [(DHS)] informed him to sign a paper in which he would be release[d]. At no time when [] petitioner signed the paper did he know he was signing his own order for removal." Id. Since being released, Petitioner "has not been in any other trouble," and Petitioner now has young children in Fresno "who depend on him to raise and take care of them." Id.

Petitioner contends that he has received threats "from the Laos government because his family help[ed] the United States Government during the Vietnam war . . ." Id. at 1. Petitioner contends that he "has nightmares of the torture he would suffer if sent back to his Home Country Laos" because of the threats Petitioner received in the past, including "that if he would return to Laos they would chop off his head." Id. According to Petitioner, DHS "is aware of these threats and Petitioner has submitted proof, but despite the proof that was sent, Petitioner is still being detained and ordered back to his home Country where his life will be in danger." Id. Petitioner seeks "an emergency stay" and order of release, arguing his detention violates his due process rights. Id. at 4-5.

Respondents argue the petition should be denied because "Petitioner is subject to a final order of removal and detained pursuant to discretionary detention authority under 8 U.S.C. §1231(a)(6)." ECF No. 8, pg. 2. According to Respondents, Petitioner was ordered removed on January 16, 2008, Petitioner waived appeal of that order, and on November 26, 2025, Petitioner's motion to reconsider/reopen his final order of removal was denied by an immigration judge. See id. Respondents contend that on January 27, 2026, Petitioner was arrested on an administrative warrant, provided "with a notice revoking his release based on a significant likelihood of removal in the reasonably foreseeable future," and "[i]mmigration officials attempted to conduct an informal interview required by the regulations with Petitioner, but he refused to provided [sic] a statement." Id. at 2-3. Respondents received travel documents for Petitioner from the government of Laos on March 2, 2026, which are valid for 90 days. See id. at 3. On March 25, 2026, this Court issued a screening order which directed Respondents to not transfer Petitioner and, though Petitioner was scheduled to leave on a flight that day, "out of an abundance of caution, Respondents interpreted the do not transfer order to also include an order not to remove

Petitioner," and did not place Petitioner on that flight. Id. at 3, n. 2.

Respondents argue that Petitioner's three-month detention is reasonable because there is a significant likelihood of Petitioner's removal in the foreseeable future as evidenced by the travel documents Respondents received from the government of Laos. See id. at 4-5. Respondents also contend that this "Court lacks jurisdiction to enjoin respondents from removing Petitioner from the United States." Id. at 5 (citing 8 U.S.C. 1252(g); 8 U.S.C. § 1252(b)(9)).

In a response to Respondent's prior request to modify the court's non-transfer order, Petitioner reiterates that he "came to the United States as a refugee because his family helped the United States government during the Vietnam war" because Petitioner and his family's "lives were in danger of being tortured and killed in his home country Laos." ECF No. 9, pg. 1. Petitioner again states that he did not know what he was signing when signing his removal order because, at the time, Petitioner only spoke Lao. See id. at 2. Petitioner asserts that he "has sent many letters to [DHS] and two petitions to the immigration court at 100 Montgomery St. #800, San Francisco, CA 94104 informing them he was requesting asylum due to those threats and statements made and proved that the threats and statements were true." Id. at 2. According to Petitioner, the "immigration court in San Francisco rejected petitioners petition and informed petitioner he had to file in Omaha Immigration Court," but when Petitioner did that, the Omaha Immigration Court informed Petitioner he had to file in San Francisco. Id. Petitioner asserts that there is proof these threats are true because a United States Army General has documented the same threats from the Laos government and it is known that "the Pathel Lao targeted those seen as traitors-primarily the Hmong who supported U.S. forces." Id. at 2-3. Petitioner asserts that his deportation to Laos would violate the Convention Against Torture. See id. at 3.

However, there is no evidence in the record that Petitioner filed for withholding of removal or protection under the Convention Against Torture based on his claim that he fears torture if returned to Laos.

/ / /

/ / /

/ / /

3

## II. DISCUSSION

As a preliminary matter, the Court acknowledges Respondents' decision to not place Petitioner on his March 25, 2026, flight to Laos, was out of deference to this Court's prior order. However, the undersigned finds that Respondents did not follow the requirements of 8 C.F.R. § 241.13(i) when revoking Petitioner's release because there is no evidence the proper authorizing official made the findings required by § 241.4(l)(2). Thus, the undersigned will recommend the petition for writ of habeas corpus be granted, Petitioner be immediately released upon the same conditions of his prior release, and Respondents be enjoined from re-detaining Petitioner absent compliance with 8 C.F.R. § 241.13(i) and § 241.4(l)(2).

The authority of ICE to detain noncitizens under federal law derives from 8 U.S.C. § 1231, which directs the Attorney General of the United States to affect the removal of any noncitizen from this country within 90 days of any order of removal. 8 U.S.C. § 1231(a)(1). However, once that time passes and after "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute," the noncitizen must be released. Zadvydas v. Davis, 533 U.S. 678, 699 (2001). Upon release, a noncitizen subject to a final order of removal must comply with certain conditions of release. 8 U.S.C. § 1231(a)(3), (6).

The revocation of that release is governed by 8 C.F.R. § 241.13(i), which authorizes revocation of a noncitizen's release for purposes of removal in compliance with § 241.4.

> Together, the statutory and regulatory language sets forth three requirements to protect a noncitizen's right to due process: (1) the noncitizen must be informed of the basis for revocation; (2) the noncitizen must be provided a "prompt" opportunity to present evidence and explain why revocation is not warranted; and (3) if the revocation is discretionary in nature, it must be made by an appropriate official.

> Esmail v. Noem, No. 2:25-CV-08325-WLH-RAO, 2025 WL 3030590, at *2 (C.D. Cal. Sept. 12, 2025) (citing § 241.13(i)(3); § 241.4(l)(2)).

The authority to revoke parole for removal is delegated to the Executive Associate Commissioner or "district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." § 241.4(l)(2). A district director is

pursuant to delegation from the Secretary of Homeland Security or any successive re-delegation, the terms mean, to the extent that authority has been delegated to such official: asylum office director; director, field operations; district director for interior enforcement; district director for services; field office director; service center director; or special agent in charge. The terms also mean such other official, including an official in an acting capacity, within U.S. Citizenship and Immigration Services, U.S. Customs and Border Protection, U.S. Immigration and Customs Enforcement, or other component of the Department of Homeland Security who is delegated the function or authority above for a particular geographic district, region, or area.

8 CFR § 1.2.

"It is well-established that government agencies are required to follow their own regulations." Constantinovici v. Bondi, 806 F. Supp. 3d 1155, 1164 (S.D. Cal. 2025) (citing United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 268, 74 S.Ct. 499, 98 L.Ed. 681 (1954); United States v. Ramos, 623 F.3d 672, 683 (9th Cir. 2010)). In light of this, district courts have found it is appropriate to order the release of immigration detainees when it is determined that ICE violated their own policies when effectuating the detention of a noncitizen. See Hoac v. Becerra, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (finding petitioner likely to succeed on his unlawful re-detention claim because "there is no indication that an informal interview was provided"); Rombot v. Souza, 296 F. Supp. 3d 383, 387 (D. Mass. 2017)(ordering petitioner's release because "the record does not show" that ICE followed the requirements to revoke release as set forth in § 241.4); Ceesay v. Kurzdorfer, 781 F. Supp. 3d 137, 164 (W.D.N.Y. 2025) (finding petitioner's due process rights were violated when ICE failed to comply with § 241.4 when revoking petitioner's release due to violations of the conditions of release); Saeid Baniasadi v. Fereti Semaia, No. EDCV 26-01275-MWF(DSR), 2026 WL 851358 (C.D. Cal. Mar. 25, 2026)(ordering a petitioner's release upon finding petitioner is likely to succeed on his claim that the revocation of his release was not in accordance with § 241.4).

Here, Petitioner was provided notice of the revocation of his release on January 27, 2026, for the purposes of effectuating his removal and because ICE was "seeking a travel document to effect your expeditious removal to LAOS." ECF No. 8-6, pg. 2.  Petitioner was provided an informal interview upon revocation of his order of supervision on that same day. See ECF No. 8-7. According to Respondents, Petitioner "refuse to provide statement." Id. It appears

5

the first two requirements, notice and an interview, were provided.[1] However, the undersigned finds that Respondents failed to adhere to the third requirement – that an authorized official make the decision to revoke Petitioner's parole.

Petitioner's Notice of Revocation of Release was signed by Orestes Cruz, Field Officer Director See ECF No. 8-6. First, it is unclear whether the authority to revoke release was delegated to Field Officer Director Cruz. However, even if such authority was delegated, nothing in the documents provided nor Respondents' answer show that Field Officer Director Cruz make the requisite findings: (1) "revocation is in the public interest and [(2)] circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." § 241.4(l)(2). Thus, the undersigned finds that Respondents did not adhere to the requirements of § 241.4(l)(2) prior to revoking Petitioner's release and will therefore recommend Petitioner be released immediately, upon the same terms of his prior release, and Respondents be enjoined from re-detaining Petitioner absent compliance with 8 C.F.R. § 241.13(i) and § 241.4(l)(2).

### III. CONCLUSION

Based on the foregoing, the undersigned recommends:

1.      It is RECOMMENDED that Petitioner's petition for writ of habeas corpus, ECF No. 1, be GRANTED;

---

[1] The Court declines to make a conclusive finding as to these requirements due to an ambiguity on the forms provided. The Court notes that the form has a section that states: "At the interview, the alien made the following oral response regarding the reason for revocation:," and below that is where the deportation officer wrote "refuse to provide statement." ECF No. 8-7. The form then includes a section that states: "The detainee [did] [did not] provide a written statement. The detainee [did] [did not] provide any documents. Any documents provided are attached." Id. The section addressing written statements and documents is not completed. That is, the officer did not choose "did" or "did not." That the form has two different sections, one for oral statement and another for written statement, would indicate that either form is acceptable, and the officer should document whether there was an oral statement **and** whether a written statement was provided. Given the portion addressing a written statement is not filled out, it is unclear whether the Deportation Officer's note that Petitioner "refuse[ed] to provide statement," is only in reference to an oral statement, as the form indicates, or whether Petitioner also refused to provide a written statement. The undersigned finds that, in light of finding Respondents failed to adhere to the requirements of § 241.4(l)(2), the Court does not need to conclusively determine whether there is sufficient information to know if Petitioner provided a written statement.

2.     It is RECOMMENDED that Petitioner Xayphone Phanhnouvong, A-025-142-781, be RELEASED IMMEDIATELY from Respondents' custody upon the same conditions as his prior release, with his belongings. Respondents shall not impose any additional restriction on him, such as electronic monitoring, unless that is determined to be necessary at a future pre-deprivation/custody hearing;

3.     It is RECOMMENDED that Respondents be ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with 8 C.F.R. § 241.13(i) and § 241.4(l)(2).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  Thus, within 7 days after being served with these findings and recommendations, any party may file written objections with the Court.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  April 14, 2026

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE